UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **GAIL MARIE BUMALA**, | Case No. 3:16-cv-0584-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL**, Commissioner of Social Security,[1] | |
| Defendant. | |

George J. Wall, LAW OFFICES OF GEORGE J. WALL, 1336 E. Burnside St., Suite 130, Portland, OR 97214. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hébert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 SW Third Ave., Suite 600, Portland, OR 97204; Lars J. Nelson, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 701 Fifth Ave., Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

**Michael H. Simon, District Judge.**

Plaintiff Gail Marie Bumala brings this action pursuant to section 205(g) of the Social Security Act (the "Act"), *as amended*, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act. For the following reasons, the Court AFFIRMS the Commissioner's decision.

## BACKGROUND

Bumala filed an application for DIB on November 20, 2012. The application was denied initially and upon reconsideration. After a request for a hearing, Bumala, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on August 19, 2014. On September 23, 2014, the ALJ issued a decision finding Bumala not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision on February 5, 2016.

Bumala's last date insured for benefits is December 31, 2004, so she must prove she was disabled by that date. AR 26. Bumala was subsequently awarded supplemental security income ("SSI") benefits on a new application, and the Commissioner found her disabled beginning in April 2013. Pl.'s Opening Br., Attach. 1, ECF 14-1 (SSI award letter). The present action, therefore, concerns the period between December 31, 2004, and March 31, 2013.

## DISABILITY ANALYSIS

The Act provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for DIB due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 & 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine if the impairment is equivalent to one of a number of listed impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1, that the Commissioner acknowledges are so severe as to preclude substantial

gainful activity. 20 C.F.R. §§ 404.1520(d) & 416.920(d). If the impairment meets or equals one of those listed, the claimant is conclusively presumed disabled. If not, the analysis continues.

At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). The ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which she performed in the past with this RFC assessment. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) & 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Parra*, 481 F.3d at 746. The claimant is entitled to disability benefits only if she is not able to perform other work. 20 C.F.R. §§ 404.1520(g) & 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* at 1110-11 (quotation omitted). The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.* at 1110. The court may not substitute its judgment for that of the Commissioner. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## THE ALJ'S DECISION

At step one, the ALJ found that Bumala did not engage in substantial gainful activity during the period from her alleged onset date of disability of February 12, 1999, through her last insured date of December 31, 2004. AR 26. At step two, the ALJ identified the following impairments as severe: ankle fracture, degenerative disc disease, history of myocardial infarction, obesity, anxiety, posttraumatic stress disorder ("PTSD"), and personality disorder. *Id.*[2] At step three, the ALJ found that these impairments, either singly or in combination, did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 26-28.

The ALJ concluded that Bumala retained the RFC to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b). AR 28. Specifically, she is limited to performing only simple, entry level work in a routine environment, and she should not have any transactional interaction with the public, and should have only occasional interaction with co-workers. *Id.*

---

[2] The ALJ found that although Bumala had been assessed with possible carpal tunnel syndrome, he noted that this was not confirmed with a nerve conduction study and so he found that carpal tunnel syndrome was not a medically determinable impairment. AR 26.

PAGE 5 - OPINION AND ORDER

Based on this RFC, and relying on the testimony of a vocational expert ("VE"), the ALJ concluded at step four that Bumala could not perform her past work, but at step five determined that Bumala could perform other work in the national economy, such as assembler or packager. AR 39-40. As a result, the ALJ concluded that Bumala was not disabled under the Act. AR 40.

## FACTS

Born in 1956, Bumala has Bachelor's Degrees in Liberal Arts and in Psychology, and has completed coursework towards a Master's Degree in Human Development. AR 51. She resides with her long-time partner, Kimberly Brown. AR 54.

Bumala last worked on February 12, 1999, as Director of Social Services at a rehabilitation and nursing facility. AR 52-53. She allegedly had an "emotional breakdown" on February 12, 1999, due to declining conditions at the facility. AR 53-54. Bumala has since suffered from anxiety attacks, depression, PTSD, incidents of extreme rage, and periods of dissociation. *E.g.*, AR 274-76, 289-92, 304, 309, 322. Some medical examiners have diagnosed Bumala with borderline personality disorder, and disagreed with the PTSD diagnosis. AR 398-401, 434-39, 587-88. Bumala has also suffered from a back injury and from back and neck pain (degenerative disc disease). AR 274, 677. Bumala suffered a heart attack in May 2001. A R 305.

Bumala receives SSI benefits, as noted. Bumala has also received worker's compensation benefits. AR 57.

## DISCUSSION

Bumala argues that the ALJ erred in three respects in finding her not disabled: first, that the ALJ improperly rejected the opinion of Bumala's treating physician, Kelly Scott, M.D.; second, that the ALJ improperly discounted Bumala's own testimony; and third, that the ALJ improperly rejected the third-party lay testimony of Kimberly Brown.

PAGE 6 - OPINION AND ORDER

A.        The Opinion of Treating Physician Kelly Scott, M.D.

Bumala argues that the ALJ improperly rejected the opinion of Dr. Kelly Scott, who has been Bumala's treating physician since 1999. AR 906. Dr. Scott opined in November 2000 that Bumala was unable to work since prior to November 7, 2000, and until at least April 1, 2001, due to Bumala's "overall condition, including depression." AR 315. In June 2001, he stated that Bumala was "still unable to work," particularly due to stress. AR 294. In October 2001, he opined that Bumala was too emotionally labile to work full time. AR 279. On August 7, 2014, Dr. Scott responded to a letter in which he indicated (by checking a box with pre-prepared text) that he concurred with the functional and psychical limitations provided in the psychological assessment of Bumala performed by Linda Fishman, Ph.D., *see* AR 892-904,[3] and that these limitations had persisted since February 1999, AR 906.

The ALJ gave Dr. Scott's opinion "little weight" based on Bumala's activities of daily living and her symptoms' improvement with medication. AR 33. The ALJ, however, did give "great weight" to Dr. Scott's October 2002 opinion that although Bumala would be unable to resume her work as a social worker, she could work as a freelance artist or in some other "less structured type work using her social work skills." AR 35. The ALJ found that this opinion was "generally consistent with the objective medical evidence" that Bumala's condition improved with medication and that she had no more than moderate limitations in cognitive or social functioning. AR 35. The ALJ further gave "little weight" to Dr. Scott's opinion that he concurred with the

---

[3] Dr. Fishman conducted a psychological evaluation of Bumala in July 2014. AR 892-901. Dr. Fishman assessed Bumala has having moderate impairment in some areas of functioning, and severe limitations in others. AR 898-900. The ALJ gave Dr. Fishman's opinion regarding the severity of Bumala's limitations "limited weight." AR 36. Although Dr. Scott expressly concurred with Dr. Fishman's opinion, Bumala has not challenged the ALJ's discounting of Dr. Fishman's opinion.

PAGE 7 - OPINION AND ORDER

limitations and assessment made by Dr. Fishman, given Bumala's symptoms' improvement with medication, her activities of daily living, Dr. Scott's opinion that Bumala could work as a freelance artist, and the inconsistency of Dr. Scott's opinion with those of examining physicians Larry Friedman, Eric Goranson, Warner Swarner, and Thomas Dodson, AR 32-36, who evaluated Bumala and found no more than moderate limitations in cognitive or social functioning, AR 37.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing 20 C.F.R. § 404.1527). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn*, 495 F.3d at 631-32. If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* at 632 (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. "An ALJ can satisfy the 'substantial evidence' requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation omitted).

The opinions of examining doctors Friedman, Goranson, Swarner, and Dodson constitute substantial evidence which conflicts with Dr. Scott's. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Dr. Friedman opined that "it does not appear that Ms. Bumala has objective impairment in any area of neurocognitive ability. Neuropsychologically, she has no limitations or restrictions." AR 282. Dr. Goranson stated that "Ms. Bumala is completely capable of

PAGE 8 - OPINION AND ORDER

performing all activities of daily living," and "[t]here are no psychiatric restrictions for Ms.

Bumala to return to work." AR 439. Dr. Swarner assessed Bumala as having only "mild

impairment" and concurred with Dr. Goranson's report. AR 400. Dr. Dodson concluded that

> Ms. Bumala does not have any objective permanent impairment . . . . She functions highly in her personal and social life. She has no deficits in her attention[,] memory, concentration, judgment or other cognitive functions. She has the ability to adapt to the ordinary activities and stresses of daily living. She is quite capable of avoiding problems with her social and personal relationships.

AR 583. The ALJ found that each of Drs. Friedman, Goranson, Swarner, and Dodson's reports

were generally consistent with the objective medical evidence regarding Bumala's improvement

with medication and her no more than moderate limitations in cognitive and social functioning.

AR 33-36. Bumala has not challenged the ALJ's decision to grant substantial or great weight to

these doctor's opinions. In light of this substantial evidence that conflicted with Dr. Scott's, the

ALJ was required only to provide specific and legitimate reasons to discount Dr. Scott's opinion.

The ALJ provided various legitimate reasons for discounting Dr. Scott's opinion. He

found that Dr. Scott's opinion conflicted with Bumala's daily activities, such as her

jewelry-making hobby (including having a friend who "comes out to [Bumala's] house and . . .

teaches her how to facet gems," and Bumala's saying she hoped she could make jewelry-making

her "job"), AR 430, 581; her taking care of various pets, including alpacas, AR 430, 581; her doing

light housework most days, AR 430, 581; and her involvement at her church, including helping

with pastoral search committees, AR 581. These activities conflict with Dr. Scott's opinion that

Bumala could not work; had moderate to severe problems with understanding, memory, sustained

concentration, and persistence; and had difficulty socializing. AR 315, 902-03, 906. This

conflict with the activities of daily living constitutes a specific and legitimate reason to discount

PAGE 9 - OPINION AND ORDER

Dr. Scott's medical opinion. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (rejecting treating physician's testimony that "appear to be inconsistent with the level of activity that [plaintiff] engaged in by maintaining a household and raising two young children"); *Aarestad v. Comm'r of Soc. Sec. Admin.*, 450 F. App'x 603, 605 (9th Cir. 2011) (holding that the ALJ provided specific and legitimate reasons for rejecting doctors' opinions, in part because those opinions were inconsistent with plaintiff's "own admitted daily activities and abilities").

Additionally, Dr. Scott's own treatment notes repeatedly indicate improvement in Bumala's symptoms. In November 2002, Dr. Scott noted that Bumala's anxiety was "doing pretty well," AR 627; in February 2003, Bumala was "feeling better" in terms of anxiety and adjustment reaction, AR 621; in March 2003, she was "doing a lot better" in terms of anxiety and depression, AR 619. The ALJ may discount a medical opinion that conflicts with treatment notes. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that contradictory reporting from a doctor regarding a patient's capabilities "is a clear and convincing reason for not relying on the doctor's opinion"); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (same); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (same). These reports of improvement conflict with Dr. Scott's own assessment of Bumala's limitations and provide additional grounds upon which the ALJ could discount Dr. Scott's opinion.

Further, Bumala's condition also improved with medication. Despite Bumala's testimony that she had consistent panic attacks between 2000 and 2004, AR 65, her treatment records show improvement with medication, with notes of decreasing anxiety and fewer anxiety attacks.[4] This

---

[4] *See* AR 363-64 ("[N]o reports for anything more than the occasional anxiety attack. A definite improvement in symptoms!" (May 30, 2000)), 324 ("Her anxiety level has been all right." (June 12, 2000)), 364-65 ("Gail reports that she feels much better than she has in a long time . . . . She reports no anxiety attacks or rages this week, a first since I started working with her." (June 28,

contradicts Dr. Scott's opinion as to Bumala's inability to return to full-time work. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *Rusten v. Comm'r of Soc. Sec. Admin.*, 468 F. App'x 717, 720 (9th Cir. 2012) (holding that ALJ did not err in giving reduced weight to opinion of treating physician where plaintiff's condition could be controlled with medication); *Bales v. Comm'r of Soc. Sec.*, No. 3:14-cv-01553-HZ, 2015 WL 5686884, at *8 (D. Or. Sept. 25, 2015) (holding that plaintiff's improvement with symptoms provided basis for discounting physician's opinion of plaintiff's limitations); *Petersen v. Comm'r, Soc. Sec. Admin.*, No. 3:15-cv-01023-HZ, 2016 WL 1029481, at *8 (D. Or. Mar. 15, 2016) (same); *see also* 20 C.F.R. § 404.1529(c)(3)(iv) (requiring the ALJ to consider "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms")

In response to this argument, Bumala argues that her apparent improvement is actually a result of her having structured her daily living to avoid nearly all stress; she argues that it is this stress avoidance that has enabled her to engage in the described activities of daily living, and that she would not be able to plan her days in this way if working full-time. *See, e.g.*, AR 64-66. However, "[i]t is the ALJ's role to resolve evidentiary conflicts," and "[i]f there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld. *Allen v. Sec'y of*

---

2000)), 322 ("PTSD – Overall, she is doing better." (Sept. 6, 2000)), 312-13 ("Gail also reports that her anxiety level has been reducing, and her memory has been improving." (Feb. 27, 2001)), 627-28 ("Anxiety. Seems like we are doing pretty well. Will try to decrease the Klonopin a little bit further . . . and increase the BuSpar." (Nov. 11, 2002)), 623-24 ("Anxiety/depression. She is doing quite well on the Wellbutrin." (Jan. 14, 2003)), 621-22 ("Anxiety/adjustment reaction – she is feeling better on current medications." (Feb. 18, 2003)), 619-20 ("Anxiety/depression: Overall, she is doing a lot better on her new medication regimen." (March 28, 2003)), 612-14 ("History of posttraumatic stress disorder--so far 1 month off medications and seems like she is doing pretty well in terms of anxiety and depression." (Feb. 5, 2007)).

PAGE 11 - OPINION AND ORDER

*Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984). Thus, the ALJ was entitled, on review of the medical evidence in the record, to attribute Bumala's improvement to medication, to find her activities of daily living consistent with full-time work, and to reject the explanation that only through Bumala's reportedly meticulous stress avoidance did she manifest improvement.

The ALJ provided specific and legitimate reasons to discount the opinion of treating physician Dr. Scott, whose opinion is contracted by that of other examining doctors in the record. Thus, the ALJ did not err in discounting Dr. Scott's opinion.

**B.     The ALJ's Discounting of Bumala's Testimony**

Bumala argues that, given the absence of evidence of malingering, the ALJ did not provide sufficient reason for discounting her testimony. Bumala testified that she cannot work full-time because she has anxiety attacks when stressed or excited, experiences incidents of intense rage, and does not sense time passing. AR 55, 64-66; *see also* AR 28 ("The claimant alleges she is unable to work due to PTSD, anxiety, depression, neck pain and back pain."). The ALJ found that Bumala's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible because she experienced improvement with medication and because her activities of daily living were not significantly limited. AR 29-31.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. First, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptoms, but only to show that it could reasonably have caused some degree of the symptoms. *Id.* In the second stage of the analysis, the ALJ must assess the credibility of the claimant's

PAGE 12 - OPINION AND ORDER

testimony regarding the severity of the symptoms. *Id.* The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan*, 246 F.3d at 1208. General findings are insufficient to support an adverse credibility determination; the ALJ must rely on substantial evidence. *Id.* In order to find a plaintiff's testimony regarding the degree of impairment unreliable, the ALJ must make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may consider many factors in weighing a claimant's credibility, including

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quotation omitted).

At stage one, the ALJ found that Bumala's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but at stage two, found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR 29. The ALJ pointed to specific evidence undermining the credibility of Bumala's statements regarding the extent of her disability by looking to the improvement of Bumala's condition with medication, as discussed above. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (holding that the ALJ may consider the effectiveness of medication in assessing

PAGE 13 - OPINION AND ORDER

claimant's credibility); *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998), *as amended* (Jan. 26, 1999) (holding that ALJ may rely upon plaintiff's use of helpful medication in discounting testimony credibility); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (holding that documented improvement with medication undermined claims of lack of improvement); *Fenton v. Colvin*, No. 6:14-cv-0350-SI, 2015 WL 2250468, at *5 (D. Or. May 13, 2015) ("[T]he record supports that Plaintiff improved with medication and improvement with medication may be a clear and convincing reason to discount credibility."). This constitutes a sufficiently specific basis on which to discount Bumala's reports of the severity of her symptoms.

The ALJ also provided sufficient reasons to discount Bumala's testimony by comparing her activities of daily living with the demands of full-time employment, as discussed above. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (holding that ALJ may rely on testimony about the claimant's daily activities in assessing claimant's credibility); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ was permitted to consider daily living activities in his credibility analysis. . . . [I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities."); *Smolen*, 80 F.3d at 1284 n.7 (9th Cir. 1996) ("[T]he ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting."); *Valvo v. Astrue*, No. 3:12-cv-00477-HZ, 2013 WL 1326588, at *5 (D. Or. Mar. 30, 2013) (holding that the ALJ appropriately noted inconsistency between plaintiff's claimed symptoms and reported daily activities, which included household chores, shopping, tending to a dog and cat, and assisting his disabled mother, and "hobbies [that] included writing a book about

traveling, working on a computer, and making jewelry and leather goods"). This too constitutes a sufficiently specific basis on which to discount Bumala's reports of the severity of her symptoms.

The Commissioner has appropriately identified the testimony of Bumala that he found not credible, and sufficiently explained why he discounted the testimony. Thus, the ALJ did not err in discounting Bumala's testimony.

## C. The Lay Witness Testimony of Kimberly Brown

Bumala argues that the ALJ erroneously discounted the third-party lay witness testimony of Kimberly Brown, Bumala's long-time partner. At the hearing, Brown testified to the extent of Bumala's issues with rage and panic attacks, including that Bumala would become incredibly angry at any stressful situation or if thwarted, with this anger going to the "tenth power" and resulting in Bumala wanting to hurt people. AR 70-73. Brown also testified that Bumala has problems with memory. AR 72-73. Brown submitted a third-party function report that described Bumala's limitations, AR 219-26; Brown reported that stress causes Bumala to become anxious and depressed, and that Bumala cannot keep track of time and is unable to stay on task, AR 219.[5] The ALJ gave "[l]imited weight . . . to Ms. Brown's testimony regarding the severity of the claimant's cognitive and emotional symptoms" due to Bumala's improvement with medication and the extent of Bumala's activities of daily living. AR 32.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). A legitimate reason to

---

[5] *See also* AR 223 ("[S]he struggles with planning a project & getting things done."), 224 ("She has problems remembering information, completing tasks without a bit of prompting & follow-up. Her ability to understand is affected by stress."), *id.* ("How well does the disabled person follow spoken instructions? Struggles if there is more than one step.")

discount lay testimony is that it conflicts with medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Where a lay witness's testimony is similar to the plaintiff's, and the ALJ properly discounted the plaintiff's testimony, "it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony." *Valentine*, 574 F.3d at 694.

The limitations described by Brown contradict the opinions of examining doctors Friedman, Goranson, Swarner, and Dodson, discussed above; because the ALJ gave those doctors' opinions significant weight, this constitutes sufficient reason to discount Brown's lay testimony. *Molina*, 674 F.3d at 1112, 1118-19 (finding that conflict with medical source's opinion was germane reason to discount lay testimony). The ALJ was also entitled to discount Brown's testimony given its conflict with Bumala's activities of daily living, which did not manifest the limitations Brown described. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir.2008) (holding that inconsistency with claimant's self-reported activities of daily living was a germane reason to discount lay witness testimony); *Bayliss*, 427 F.3d at 1218 (same). Further, the improvement in her condition that Bumala experienced with medication, which improvements were not reflected in the limitations Brown described, is an additional sufficient and germane reason to discount Brown's testimony. *See Bayliss*, 427 F.3d at 1219 (holding that inconsistency with medical evidence is a germane reason for discounting lay testimony); *Osborn v. Comm'r Soc. Sec. Admin.*, No. 2:15-cv-01807-MA, 2016 WL 6133831, at *8 (D. Or. Oct. 19, 2016) (holding that ALJ provided germane reason for discounting lay testimony where the testimony failed to take into account claimant's improvement with medication). Finally, the reasons for discounting the credibility of Bumala's own testimony apply equally as germane reasons to discount Brown's. *Valentine*, 574 F.3d at 694.

Thus, the ALJ gave sufficient germane reasons to discount Brown's lay testimony.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the Court AFFIRMS the Commissioner's decision.

**IT IS SO ORDERED.**

DATED this 26th day of April, 2017.

                                          /s/ Michael H. Simon
                                          Michael H. Simon
                                          United States District Judge